104 F.3d 350
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES OF AMERICA, Appellee,
v.
Cherifo BODIAN, aka Sherif B., Defendant-Appellant.
 No. 96-1124.
 United States Court of Appeals, Second Circuit.
 Sept. 24, 1996.
 
 APPEARING FOR APPELLANT:Philip L. Weinstein, Legal Aid Society Federal Defender Division, New York, NY.
 APPEARING FOR APPELLEE:Nancy L. Kestenbaum, Assistant United States Attorney for the Southern District of New York, New York, NY.
 Before MINER, ALTIMARI and PARKER, Circuit Judges.
 
 
 1
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the Southern District of New York, it is hereby
 
 
 2
 ORDERED, ADJUDGED, AND DECREED that the judgement be and hereby is AFFIRMED.
 
 
 3
 This cause came on to be heard on the transcript of record and was argued by counsel.
 
 
 4
 Defendant-appellant Cherifo Bodian, a/k/a Sherif B., appeals from a judgement entered in the United States District Court for the Southern District of New York (Duffy, J.) convicting him, after a jury trial, of conspiracy to commit credit card fraud, in violation of 18 U.S.C. § 371, and use of one or more unauthorized access devices during a one-year period to obtain things of value aggregating $1000 or more, in violation of 18 U.S.C. §§ 1029(a)(2) and 2. The district court sentenced Bodian to a 27-month term of imprisonment, a two-year term of supervised release, restitution in the amount of $188,532.23, and a $100 special assessment.
 
 
 5
 From March of 1993 through June of 1994, Bodian participated in a scheme to defraud the American Express Company ("American Express") with Jon Diallo, Camille Jackson, and Kim Freeman. The scheme consisted of establishing fictitious businesses and applying to American Express to enroll them as American Express "Service Establishments." Once enrolled, the businesses would be permitted to accept payment by American Express credit card and then to be reimbursed by American Express. The participants in the scheme acquired active American Express card numbers and expiration dates and used this information to fill out false receipts and purchases. In total, the scheme utilized over 75 card numbers and made over 800 false charges, totalling over $257,000. By June of 1994, American Express had paid out the sum of $192,675.83 to the conspirators.
 
 
 6
 Trial testimony indicated that Bodian played a substantial role in the scheme. He was responsible for obtaining six card numbers from a store he managed. These numbers were used on charges totalling $42,229.19. Bodian personally received 34 American Express reimbursement checks totalling over $36,000. Testimony by Jackson indicated that Bodian was involved in the day-to-day execution of the scheme. She testified that Bodian and Diallo were often together and that they frequently spoke on the telephone. Jackson testified that she overheard telephone conversations in which Diallo and Bodian discussed the status of checks, reimbursements, and charges.
 
 
 7
 Bodian was arrested on June 3, 1994. He was charged in a three-count indictment with conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371, use of one or more unauthorized access devices during a one-year period to obtain things of value aggregating $1000, in violation of 18 U.S.C. §§ 1029(a)(2) and 2, and possession of 15 or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3) and 2.
 
 
 8
 After a three-day trial, the jury returned a verdict of guilty on the conspiracy and use of an unauthorized access device counts, but acquitted him on the possession of unauthorized access devices count. He was sentenced principally to a 27-month term of imprisonment and was ordered to make restitution in the amount of $192,675.83.
 
 
 9
 Bodian appealed his conviction and sentence, claiming, inter alia, that the district court erred by failing to make particularized findings of the amount of loss attributable to him. By summary order, we affirmed Bodian's conviction and remanded to the district court to make appropriate findings with regard to restitution, including attributable loss.
 
 
 10
 Bodian was resentenced on February 6, 1996. The district court determined that the loss attributable to Bodian should include the loss that was within the scope of his agreement and that was reasonably foreseeable to him. In determining that the entire loss was within the scope of the agreement, the court relied on the testimony of Jackson, referring to relevant portions of her testimony. When the district court resentenced Bodian, it imposed a sentence of restitution in the amount of $188,532.23, which represented the total intended loss from the time Bodian entered the conspiracy. This appeal followed.
 
 
 11
 On appeal, Bodian argues the district court misapplied U.S.S.G. § 1B1.3(a)(1)(B) in determining the amount of loss attributable to him. This contention is without merit. Section 1B1.3(a)(1)(B) provides that a defendant's base offense level should reflect "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Accordingly, we have held that a district court must make particularized findings of both the foreseeability of the loss as well as the scope of the criminal activity agreed upon by the defendant. United States v. Studley, 47 F.3d 569, 574 (2d Cir.1995).
 
 
 12
 In this case, the district court identified the correct legal standard and properly applied that standard to the facts of the case. The district judge stated:
 
 
 13
 [The intended loss] certainly was within the scope of the agreement and it was within the overall ... part of the agreement, that is clear. The agreement didn't set a monetary top-out, that's clear, and was it foreseeable? Yes. Any doubt about it? Not in my mind.
 
 
 14
 The court based its conclusion on the particularized findings that included lengthy references to testimony given by Jackson. The evidence adduced at trial indicated that Bodian was engaged in check cashing and obtaining card numbers. The evidence also demonstrated that he had a significant role, along with Diallo, in overseeing the scheme. When viewed in the light most favorable to the government, see United States v. Paccione, 949 F.2d 1183, 1208 (2d Cir.1991), cert. denied, 505 U.S. 1220 (1992), the evidence supports the district court's finding.
 
 
 15
 In view of our disposition of this appeal, we do not reach Bodian's final contention that this case should be assigned to a different district judge on remand.